1

2                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
3                          EASTERN DIVISION

4    UNITED STATES OF AMERICA,

5             Plaintiff,              Case No. 5:08CR290
                                      Akron, Ohio
6         vs.                         Tuesday, July 28, 2009
                                      9:00 a.m.
7    SERGIO DURAZO,

8             Defendant.

9

10              TRANSCRIPT OF SENTENCING HEARING
                BEFORE THE HONORABLE SARA LIOI
11              UNITED STATES DISTRICT JUDGE

12
     APPEARANCES:
13
     For the Government:   Robert E. Bulford
14                         Assistant United States Attorney
                           2 South Main Street, Room 208
15                         Akron, Ohio 44308
                           (330) 375-5716
16
     For the Defendant:    R. Clayton Hernandez
17                         The Johnson House Offices
                           455 West Paseo Redondo
18                         Tucson, Arizona 85701
                           (520) 882-8823
19
     Court Reporter:       Caroline Mahnke, RMR, CRR
20                         Federal Building & U.S. Courthouse
                           2 South Main Street, Suite 568
21                         Akron, Ohio 44308
                           (330) 252-6021
22

23
     Proceedings recorded by mechanical stenography; transcript
24   produced by computer-aided transcription.

25

1        THE COURT:  The Court has before it Case Number

2    5:08CR290, United States of America versus Sergio Durazo.

3        The defendant is present in the courtroom accompanied

4    by his attorney, Clay Hernandez.  Also present is Assistant

5    United States Attorney Robert Bulford representing the

6    government.  And finally, United States Probation Officer

7    Donald Stranathan is present.

8        Good morning to all.

9        MR. HERNANDEZ:  Good morning.

10        MR. BULFORD:  Good morning.

11        THE PROBATION OFFICER:  Good morning, Your Honor.

12        THE COURT:  This case involves two defendants in

13    a two-count indictment.  Defendant Durazo is charged in both

14    counts in the indictment as follows:  Count 1, conspiracy to

15    distribute with intent to distribute marijuana and cocaine,

16    and Count 2, interstate travel to promote unlawful activity.

17        On February 6, 2009, Defendant Durazo entered a plea

18    of guilty as to Count 1.  This case is set today for

19    sentencing.  The Court has received and reviewed the

20    presentence report along with defendant's sentencing

21    memorandum and letters submitted in support of the

22    defendant.

23        The Court has also reviewed the objections to the

24    presentence report which the defendant has filed separately,

25    and also which are contained within the presentence report.

1          Counsel, have you each received and reviewed a copy of

2    the presentence report?

3               MR. HERNANDEZ:  Yes, Judge, we have.

4               MR. BULFORD:  Yes, Judge.

5               THE COURT:  Mr. Durazo, have you reviewed a copy

6    of the presentence report?

7               THE DEFENDANT:  Yes, I did.

8               THE COURT:  And just to make it clear, Mr.

9    Durazo, you have not required an interpreter --

10              THE DEFENDANT:  No.

11              THE COURT:  -- during these proceedings; is that

12    correct?

13              THE DEFENDANT:  I do not.

14              THE COURT:  Do you feel that you need the

15    assistance of an interpreter in any way?

16              THE DEFENDANT:  No, I don't.

17              THE COURT:  Okay.  I just want to make sure.

18       Counsel, is that your assessment as well?

19              MR. HERNANDEZ:  It is, Judge.  While Mr. Durazo

20    and I speak in Spanish when we discuss things, I've

21    discussed the issue with regard to an interpreter a number

22    of times and this is his preferred manner of proceeding.

23    And I don't believe he misses anything.  I think he is

24    proficient in both languages.

25              THE COURT:  Very well.  I just wanted to

1     establish that once again for the record.  Thank you.

2          All right.  Now, getting back to the presence report,

3     the Court understands that the government has no objections

4     to the presentence report.  Is that correct, Mr. Bulford?

5               MR. BULFORD:  That's correct, Your Honor.

6               THE COURT:  The Court further understands, as I

7     alluded to earlier, that the defendant has two objections to

8     the report.  And we will address those objections at this

9     time.

10          The first objection, as set out in document 47, had to

11     do with acceptance of responsibility, and in fact there is a

12     statement in the presentence report regarding acceptance of

13     responsibility, and the Court accepts that statement.

14               MR. HERNANDEZ:  And I'll withdraw that objection,

15     Judge.

16               THE COURT:  Very well.

17          The next objection that you set forth has to do with

18     the criminal history points, and I will let you address that

19     objection now.

20               MR. HERNANDEZ:  Thank you, Judge.  I have

21     provided -- I don't know if the Court can hear me, if this

22     microphone is on or not.  I'll just speak up.

23          The Court has received, I believe, our sentencing

24     memorandum, and I have provided both the government and Mr.

25     Stranathan the appropriate minute entries that we were able

1    to find with regard to the criminal history that we take

2    exception to.

3         I believe in the criminal history that we received on

4    April the 8th that -- we do accept the number 37, which was

5    the prior dated in 1992 and a conviction occurring in 1998,

6    and we do acknowledge the prior conviction in number 41

7    occurring in 1998.

8         The other two in number 43 and number 39 we take

9    exception to.  We provided the government and the probation

10   department with minute entries and police reports from the

11   justice court, the city court files out of Pima County,

12   Arizona which is where Tucson is located.  I am satisfied.

13   I can't speak for the government.  I believe they agree that

14   on those two particular instances, those were not

15   attributable to my client.

16        We provided the documents that included fingerprints.

17   We provided documents that showed the arrest reports which

18   include a physical description of the individual as between

19   5-3 and 5-4, and I don't believe that those two apply to Mr.

20   Durazo.

21        As a result, Judge, I believe there are two criminal

22   history points which put him in a criminal history category

23   II as opposed to four criminal history points which would

24   put him in a criminal history III.

25             THE COURT:  And you're representing to the Court

1    that the government no longer disputes your contention?

2              MR. HERNANDEZ:  I believe that's the case, Judge.

3    I don't presume to speak for Mr. Bulford, but we have

4    discussed it and I don't believe that on those two points he

5    disagrees with us on that.

6              THE COURT:  All right.  Perhaps we should hear

7    from Mr. Bulford then.

8              MR. BULFORD:  Your Honor, I think the records

9    he's shown me would indicate there is a question whether

10   it's the same person.  So, I mean, it's questionable.  I

11   don't know what Mr. Stranathan has been able to find out

12   from these.

13             THE PROBATION OFFICER:  Your Honor, I'm just

14   going by the information provided by defense counsel.  Mr.

15   Hernandez has provided a good point that the physical

16   descriptions in the report could contradict the actual

17   physical descriptions of the defendant here in court right

18   now.

19        So based on what Mr. Hernandez is saying, there could

20   be reasonable -- you know, reason to believe that was not

21   Mr. Durazo who was actually arrested on those offenses.

22             MR. BULFORD:  Your Honor, I think he's also

23   raised, if those two points were assessed, I think he's

24   raised -- he had raised the issue that it would

25   overrepresent.

1          THE COURT:  Right.

2          MR. HERNANDEZ:  Yes, but I didn't think that was

3     an objection.  I thought that was --

4          MR. BULFORD:  It isn't, but I think practically

5     speaking here, if we can't say for certain it's him, I mean,

6     you have that other argument anyway, so I don't see

7     anything -- to me, I wouldn't disagree with the Court

8     finding a criminal history II.

9          THE COURT:  All right.  So because of the

10    uncertainty, as both counsel have indicated now, there seems

11    to be an agreement that the better course would be to not

12    include the two points and to then make the final

13    determination that the criminal history category is a II as

14    opposed to a III.

15         Now, I am perplexed, however, and perhaps this was a

16    misstatement in the presentence report at paragraph 60,

17    because even though the dates don't jibe, it indicates that

18    the defendant acknowledged incurring two driving under the

19    influence convictions in '92 and '98 respectfully.

20         So was that just a mistake where the defendant

21    acknowledged the two DUI's?  And I'll ask Probation Officer

22    Stranathan that question.  Paragraph 60.

23         THE PROBATION OFFICER:  Your Honor, that's based

24    on my interview with the defendant, so I really -- I can't

25    elaborate any more on that matter.  That's just the

1    information I got from Mr. Durazo.

2              THE COURT:  Well, I guess what's perplexing about

3    that is there isn't even a DUI in the record that was dated

4    1992.  There is a -- if you look at the record, the

5    convictions, there is a 1992 conviction for criminal damage

6    which I believe he admits to.  Then there is a 1997, then a

7    1998, and then a 1999 DUI conviction -- DUI convictions.

8          So it does not fit, if you will.  These dates don't

9    jibe.  There appears to be an admission of two DUI's,

10   however, the dates don't make any sense.

11             MR. HERNANDEZ:  What I would suggest is one of

12   two things.  I was present for the interview.  We were

13   dealing with something in 1992, and the 1992 one, as the

14   Court knows, but for the conviction in '98, I don't know

15   that it would be something we would be including in this

16   calculation because of the remoteness of this.

17         I don't know whether my client had a conviction for

18   DUI in '92 that didn't show up, but as the Court correctly

19   states, the matter in 1992 he makes reference to was

20   actually a criminal damage and not a DUI.

21             THE COURT:  All right.  Well, I just want to make

22   this perfectly clear on the record that we have thoroughly

23   reviewed the criminal history, and I think we have, and I

24   think there is an agreement that because there is some doubt

25   with respect to two of the DUI convictions set forth in the

1   presentence report that the Court will not include those two

2   in the calculation.  And therefore, there are two criminal

3   history points, and therefore, that results in a criminal

4   history category of II which we will review again in one

5   moment.

6           Anything further on that issue?

7               MR. HERNANDEZ:  There is not, Judge.

8               THE COURT:  And then you will be making an

9   argument later, correct, counsel, relative to why you think

10  the criminal history category II overrepresents your

11  client's criminal history category.

12              MR. HERNANDEZ:  Right.

13              THE COURT:  Is that correct?

14              MR. HERNANDEZ:  Yes, Judge.

15              THE COURT:  All right.

16          Are there any additional additions, deletions,

17  corrections, objections, or comments whatsoever relative to

18  the presentence report?  Or have we now resolved all of the

19  objections?

20              MR. HERNANDEZ:  We have resolved them.  All the

21  remaining objections that I have filed I will withdraw at

22  this time.

23              THE COURT:  Very well.  Let us proceed then to

24  the sentencing options.

25          And as we have just discussed, we will begin with the

1    advisory sentencing guideline calculation, specifically the

2    criminal history computation.

3          The defendant's criminal history and other criminal

4    conduct are discussed at paragraphs 34 through 46 of the

5    presentence report.

6          Based upon our discussion this morning, the

7    defendant's criminal convictions produce a subtotal criminal

8    history score of 2.  Two criminal history points correspond

9    to a criminal history category of II.

10          Is there now any objection to this calculation?

11                MR. HERNANDEZ:  No, Judge.

12                MR. BULFORD:  No.

13                THE COURT:  And counsel, you may remain seated

14    for these questions relative to calculating the sentencing

15    options and other similar matters.

16          Now, the offense level computation, the defendant's

17    criminal activity involved at least 10,000 but less than

18    30,000 kilograms of marijuana.  And therefore, the base

19    offense level for the offense is 36.

20          There is a two-level reduction pursuant to Section

21    3E1.1(a) because the defendant has accepted responsibility.

22          Does the government intend to move for any further

23    reduction pursuant to Section 3E1.1(b)?

24                MR. BULFORD:  Your Honor, yes.  I intend to

25    move -- I do move for one more.  He told us early on he was

1    going to plead guilty.

2              THE COURT:  Okay.

3              MR. BULFORD:  We did not have to prepare for

4    trial.

5              THE COURT:  Very well.  Then the Court will

6    accept and grant the motion for the additional level

7    reduction, making the adjusted offense level 33.

8         The advisory guideline range of imprisonment for an

9    offense level of 33 and a criminal history category of II is

10   151 to 188 months.

11        Is there any objection to this advisory guideline

12   sentence application?

13             MR. HERNANDEZ:  No, Judge.

14             MR. BULFORD:  No, Your Honor.

15             THE COURT:  Now, continuing on, the statutory

16   sentencing provisions:  The minimum term of imprisonment is

17   ten years or 120 months and the maximum term is life.  With

18   respect to supervised release, under the statute if a term

19   of imprisonment is imposed, a term of at least five years of

20   supervised release is required.

21        Relative to the guidelines, the guideline term for

22   supervised release is three years but not more than five

23   years.  However, because there is a statutory minimum term

24   of supervised release, the guideline term for supervised

25   release then becomes five years, which is the case in this

1    case.

2            With respect to probation, the defendant is not

3    eligible for probation because it is expressly precluded by

4    statute.  The defendant must submit to drug testing while on

5    supervised release unless the Court determines the defendant

6    is a low risk for future substance abuse.

7            Fines.  Under the statute the maximum fine is $4

8    million.  Under the guidelines the fine range for these

9    offenses -- or for this offense is $17,500 to $4 million.

10           There is a special assessment of $100 that must be

11   imposed pursuant to both statute and the advisory

12   guidelines.

13           Restitution is not an issue in this case.

14           And finally, as to federal benefits, per the statute,

15   upon a conviction of distribution of a controlled substance

16   a defendant may be declared ineligible for any or all

17   federal benefits for up to five years.  Under the guidelines

18   the Court may deny eligibility for certain federal benefits

19   of any individual convicted of distribution or possession of

20   a controlled substance.

21           Any objections to the analysis of sentencing options

22   recited by the Court?

23               MR. HERNANDEZ:  No, Judge.

24               MR. BULFORD:  No, Your Honor.

25               THE COURT:  All right.  Now then, Mr. Hernandez,

1     this is your time to state on the record anything you wish

2     to say on behalf of your client with respect to his sentence

3     in this case.

4               MR. HERNANDEZ:  Very good.  Thank you, Judge.

5               THE COURT:  Certainly.

6               MR. HERNANDEZ:  Judge, to begin with, I would

7     like to incorporate in my argument my sentencing memorandum.

8     I believe it's probably written better than I'll ever be

9     able to articulate for the Court.

10              Judge, there is two specific things I would ask the

11    Court to consider.  The first has to do with

12    overrepresentation of Mr. Durazo's criminal history.  As we

13    indicated, he has a prior -- it's listed in number 37 of the

14    presentence report -- that dates from 1992, a criminal

15    damage matter.  Apparently, and we can't determine how or

16    why, the conviction actually occurred in 1998.

17              We have provided the Court in the memorandum, in our

18    memorandum, information we were able to obtain from the

19    Court file in Arizona showing that even pretrial services in

20    state court, which is people that supervise people who are

21    accused of crimes but not yet convicted, cannot tell why the

22    matter had been dismissed and re-filed.  They do make an

23    indication in that document that it was through no fault of

24    Mr. Durazo.

25              Judge, but for this delay, because it was a

1    misdemeanor, and it's one point, Mr. Durazo would not have

2    had the additional criminal history point and then would

3    have been in a criminal history category of I.

4         Judge, I would also point out that the second

5    conviction which is reflected in '98 was also a misdemeanor.

6    It had to do with alcohol.  I believe it was a drunk driving

7    conviction, and it occurred in 1998 which by our

8    calculations is ten years prior to the accusation in this

9    charge and now 11 years from the sentencing.

10        Judge, we made reference to a case, while it is not

11   precedent it may be instructive for the Court, out of the

12   District Court in Wisconsin, Hammond.  And the Hammond Court

13   made many of the findings -- the District Court there made

14   many of the findings that we believe are appropriate in this

15   case.

16        The Hammond Court indicated that because the criminal

17   history category significantly overrepresents the

18   seriousness of the defendant's criminal history, the

19   District Court may consider things such as the age of the

20   prior convictions, their relation to the instant offense,

21   age of the defendant, whether he was under the influence of

22   alcohol or drugs, and the actual time of when the matter was

23   charged.

24        Judge, for those reasons, I believe that my client

25   is -- his criminal history category II overrepresents where

1    he belongs in this matter.  It's our position, as I

2    indicated, that he belongs in criminal history category I,

3    which by our calculations are 135 -- or my review of the

4    guideline it would be 135 to 168 months, but we would ask

5    the Court to consider the 135 months.

6        Judge, my client, by being in a criminal history

7    category II, loses a number of things, including the

8    ability -- not that he would have qualified for it

9    necessarily but at least the ability to argue for safety

10   valve, which we are not doing.  We acknowledge that he is

11   not eligible for that at this time because he is a criminal

12   history category II.  So we couldn't even argue with the

13   government about whether he received that or not.

14       Judge, we also believe that as a criminal history

15   category II, his position within the Bureau of Prisons will

16   be looked at differently than if he had been a criminal

17   history category I.

18       Judge, for those reasons we're going to ask the Court

19   to find that he is -- that it does overrepresent that

20   because of the nature of the offense, the age of the

21   offense, and in one of those categories -- the age of the

22   offense, the nature of the offense, which is a misdemeanor,

23   that has nothing to do with the charges in this case having

24   to do with drug transportation or drug trafficking.

25       And also, Judge, because of the delay in charging Mr.

1     Durazo in one of those matters, the number 37 prior from

2     1992, that the conviction ended in 1998, we believe the

3     criminal history category of I is appropriate.

4          That's our first argument.

5          The second argument, Judge, deals with my client's

6     daughter, Faith.  As the Court can see from the letters we

7     received and also what is accurately put in by the probation

8     department, my client's daughter has leukemia.  She is

9     undergoing treatment.  It is ongoing.  It is extensive.  And

10    they don't know for another year or two, according to

11    doctor's letter to the Court, when or if it will be

12    successful.

13         What I would ask this Court to consider is downwardly

14    departing based upon that from the 135 months to the

15    statutory minimum of 120 months which is, I believe, the

16    least the Court can impose under the statute.

17         This has come about in the last, I believe, two years,

18    according to the doctor, or three years, according to the

19    case worker.  It is something that has impacted my client's

20    family greatly as well as my client, and I believe it would

21    qualify for a downward departure to the minimum mandatory

22    under the circumstances.

23         Judge, I don't know if now is the time to ask you or

24    not, but I would ask the Court to make a recommendation, and

25    I realize that's all it can be, that my client be allowed to

1    serve his time in an appropriate facility in the State of

2    Arizona.  We have both FCI's and the United States prison in

3    our state now, and that way he can be near his family and

4    can participate probably a little more, although I realize

5    it will be extremely limited, in the treatment for his

6    daughter.

7         So for those reasons, Judge, I would ask the Court to

8    impose at this time a sentence of 120 months.

9         Thank you, Judge.

10              THE COURT:  Thank you.

11         Mr. Bulford, on behalf of the government.

12              MR. BULFORD:  Your Honor, as far as the argument

13    that the criminal history overrepresents -- the criminal

14    history II overrepresents his criminal history, the argument

15    is logical, and the fact that the event occurred in the '90s

16    and he wasn't convicted until later, we don't know why.  I

17    certainly would not appeal or object to the Court making

18    that finding.

19         So if he comes to be a criminal history I at 33, he is

20    in the range of 135 to 168 months.  And this defendant never

21    would have qualified for safety valve for a couple of

22    reasons.

23         So I would suggest that the Court considers his record

24    which is -- what there of it is misdemeanors.  So basically

25    it's his first time being incarcerated.  So I would go

1     along -- I would recommend the Court consider a lower end of

2     the guideline range but in the guideline range, and

3     certainly make a recommendation that he be housed near his

4     family.  Thank you.

5            THE COURT:  Thank you.

6       I think you also cited another case, Mr. Hernandez.

7     It was the *Hughes* case as well --

8            MR. HERNANDEZ:  Yes.

9            THE COURT:  -- which is contained within your

10     sentencing memorandum which also indicates that the Court

11     can consider the age and the nature of the offenses when

12     determining the criminal history category.

13       Mr. Durazo, this is your sentencing hearing, and at

14     this time if you wish to speak relative to your sentence in

15     this case, you're certainly entitled to do so and you may do

16     that now.

17            THE DEFENDANT:  Your Honor, I just want to say

18     that I accept my responsibility.  And I regret my

19     involvement in this matter.  Thank you.

20            THE COURT:  Thank you.

21       All right.  Given the circumstances in this case

22     relative to the criminal history category, I believe that

23     the defendant makes a good argument that particularly the

24     misdemeanor conviction from the 1992 offense, which for

25     whatever reason wasn't prosecuted until 1998, there wasn't a

1   conviction until 1998, there was a good argument that that

2   should not be counted in the criminal history and it does

3   result in a, if you will, an overrepresentation of the

4   criminal history for purposes of sentencing in this

5   particular case.

6        And the government notes that the -- I mean, the Court

7   notes that the government is not objecting to the Court's

8   consideration of not so much disregarding but putting that

9   offense into context, and because of that, the Court finds

10  now that instead of a criminal history category II, there

11  will be -- the appropriate criminal history category is a

12  III, making --

13            MR. HERNANDEZ:  I'm sorry, Judge.

14            THE COURT:  I'm sorry.  It's a I.  My apologies.

15  I went back up to III.  It's a I.  My apologies.

16       So that's a criminal history category I and offense

17  level 33 which results in a sentencing range under the

18  guidelines of 135 to 168 months.

19       I do want to address, Mr. Durazo, you have withdrawn

20  all of your other objections.  One was -- one of the

21  objections was with respect to your client's role in the

22  offense, and even though you've withdrawn that I did want to

23  address it just so we're very thorough at this sentencing

24  hearing.

25       And I do think your client is not entitled to any

1    downward variance or reduction or departure or any sort of

2    consideration for role in the offense.  I believe the

3    criminal history -- or the offense level accurately reflects

4    your client's role in this matter.  In fact, he was the

5    contact person.  He came to Ohio several times.  He made

6    contact with Chevaliee Robinson.  He supplied.  He enabled

7    Chevaliee Robinson to be supplied with a significant amount

8    of drugs, and did he not have a minimal I'm-just-watching

9    kind of a role, as you stated in your sentencing memorandum.

10          I know that you've withdrawn that objection, but I

11   just wanted to make it clear that even if you had maintained

12   the objection today, the Court finds that that particular

13   objection is not well-taken.

14          Now, you made a second argument that there should be a

15   further downward departure because of the very unfortunate

16   health situation being faced by the defendant's daughter,

17   and that is unfortunate and the Court is sorry to hear and

18   read about the fact that the daughter has been diagnosed

19   with leukemia.

20          However, the Court believes that a further downward

21   departure is not warranted in this case, that the

22   appropriate guideline range is in fact criminal history

23   category I, offense level 33, resulting in the 135 to 168

24   month range.

25          I believe now that addresses all the objections.

1        Anything further relative to any objection?

2                MR. HERNANDEZ:  No, Judge.

3                MR. BULFORD:  No.

4                THE COURT:  Pursuant to Title 18, United States

5        Code, Section 3553(a), when sentencing, the Court is

6        required to impose a sentence sufficient but not greater

7        than necessary to comply with the purposes of sentencing set

8        forth in Section 3553(a)(2).

9            In determining a sentence, the Court is required to

10       consider the applicable factors enumerated in Section

11       3553(a) which the Court has considered and finds to be as

12       follows:

13           In the fall of 2003, Chevaliee Robinson, who is not

14       charged in this particular case, was seeking a marijuana

15       supplier.  And while in Tucson, Arizona he was introduced to

16       the defendant, Sergio Durazo, who would later introduce

17       Robinson to Jose Quintero.  Durazo traveled to Akron, Ohio

18       to meet with Robinson to discuss the details of the first

19       delivery.  After doing so, Durazo brought in codefendant

20       Jesse Cecena to facilitate the deliveries.

21           Between the fall of 2003 and the spring of 2007,

22       Durazo and Cecena made several trips to Akron, Ohio with the

23       combined weight of these loads being over $10,000 kilograms

24       of marijuana.

25           In November 2007, Reginald Dove, who is not charged in

1    this particular case, was sent by Amanda Carrington, through

2    Robinson, who was in state custody at the time, to travel to

3    Arizona to meet Durazo to arrange for delivery of 500 pounds

4    of marijuana to the Akron, Ohio area.

5        In January 2008, Durazo contacted Dove and arranged to

6    make a delivery in approximately six days.  This delivery

7    did not occur as agreed upon.

8        Durazo contacted Dove on May 13, 2008.  He indicated

9    to Dove his daughter was sick for the past two months and he

10   would deliver 400 to 500 pounds of marijuana in six to ten

11   days.

12       On June 13, 2008, Durazo called Dove to inform him

13   that he and codefendant Cecena had arrived in Akron, Ohio

14   and would meet up later that day.

15       When they met, Durazo advised Dove that their vehicle

16   had broken down in Fort Wayne, Indiana, and that they were

17   making arrangements to get the marijuana to Akron, Ohio.

18       Between June 16 and 17, 2008, they met on a few

19   occasions again, and Dove was informed he would have to find

20   someone to pick up the marijuana.

21       On June 18, 2008, Dove, Durazo, and codefendant Cecena

22   met in Richfield, Ohio.  Durazo insisted to Dove that he

23   would have to provide someone to pick up the marijuana in

24   Fort Wayne, Indiana.  Both Durazo and Cecena stressed to

25   Dove during the meeting that this was an opportunity that

1    could not be missed.  At that time Durazo and Cecena were

2    arrested by task force agents.

3         Is there any objection as to the nature and

4    circumstances of the offense as recited by the Court?

5              MR. HERNANDEZ:  No, Judge.

6              THE COURT:  Next, the history and characteristics

7    of the defendant:  Defendant is a 41-year-old Hispanic male

8    and is a registered alien from Mexico where a majority of

9    his family resides.  He has been in a common law marriage,

10   and together he and his common law wife have three children,

11   ages 14, 12 and 4.

12        He has no reported medical issues or concerns.  He is

13   currently under the care of a psychiatrist for depression in

14   relation to the instant offense and has a history of sleep

15   disturbance.

16        The defendant does have a history of substance abuse,

17   including cocaine abuse and a pattern of alcohol abuse.

18        He has a high school education from Mexico and two

19   years of college.

20        He is an entrepreneur in which he owns an auto repair

21   shop in Mexico and has also worked as an independent

22   contractor transporting heavy equipment from Mexico to the

23   United States.

24        And, of course, we have thoroughly reviewed his

25   criminal history category earlier.

1      Is there any disagreement as to the history and

2   characteristics of the defendant as recited by the Court?

3           MR. HERNANDEZ:  No, Judge.

4           MR. BULFORD:  No, Your Honor.

5           THE COURT:  We have discussed the kinds of

6   sentences available, and we won't review that again.

7      And as far as the offense level 33 and criminal

8   history category of I, the sentencing range is 135 to 168

9   months under the advisory sentencing guidelines.

10      There is also a need to avoid sentencing disparities,

11   and there was in fact a codefendant who has previously been

12   sentenced in this particular case.  That codefendant whose

13   criminal history category was determined to be in fact a III

14   received a sentence of 168 months.

15      Additionally, this case is related to another case

16   which this Court handled, and the lead defendant in that

17   particular case received a sentence of 180 months.

18      And the Court also has considered the average of

19   sentences nationally as well as sentences in the Sixth

20   Circuit which I believe were contained in the table attached

21   to the report.

22      Given all the circumstances in this case, and part of

23   the Court's consideration, even though I'm not going to vary

24   downward any further than the range of 135 to 168, I am

25   taking the daughter's health situation into consideration

1    when I impose the sentence, and I'm going to do that,

2    though, in the range provided by the guidelines.  I'm not

3    completely disregarding that.  I understand that's a very

4    serious and sad situation.

5         But notwithstanding that, the Court believes that the

6    range is the appropriate range, and the Court will work

7    within that range and give due consideration to the

8    daughter's health condition when imposing that final

9    sentence.

10        So I just wanted to discuss the disparity issue, and I

11   believe that there will be no disparity in working in this

12   particular range and in considering all of the 3553 factors

13   as well as the other sentencing factors which the Court is

14   required to consider.

15        Now, as far as the sentence, of course, there is a

16   mandatory minimum ten years to life sentence.

17        The need for the sentence imposed, the fact remains

18   that Mr. Durazo did participate in a high volume drug

19   trafficking enterprise in which he and his codefendant Jesse

20   Cecena traveled between Arizona and Ohio.  He did so knowing

21   that his activity was illegal, and that there would be

22   serious consequences for his action.

23        So while it appears from the letters of support that

24   you've received, Mr. Durazo, that you do good, and I know

25   that your children love you, they've, you know, set that

1    forth very clearly, and that your other nephews and others

2    who have written on your behalf depend upon you, the drug

3    trafficking that you were part of has consequences beyond

4    just the defendant's involvement in this case.  It impacts

5    society in ways that sometimes I don't think we can fully

6    comprehend.

7        And you were a key part of that.  And that's why the

8    Court believes that now the sentencing range that we have

9    settled upon is an appropriate range within which to

10   sentence you.  However, because of your daughter's situation

11   the Court will sentence you at the lowest end of that range.

12       So pursuant to the Sentencing Reform Act of 1984 and

13   Title 18 United States Code Section 3553(a), it is the

14   judgment of the Court that the defendant, Sergio Durazo, is

15   hereby committed to the custody of the Bureau of Prisons to

16   be imprisoned for a term of 135 months.

17       And additionally the Court will make a recommendation

18   that the defendant will be placed in an appropriate facility

19   in Arizona as close to his family as possible.

20           MR. HERNANDEZ:  Thank you, Judge.

21           THE COURT:  Upon release from imprisonment, the

22   defendant shall be placed on supervised release for a term

23   of five years.  Within 72 hours of release from the custody

24   of the Bureau of Prisons, the defendant shall report in

25   person to the United States probation office in the

1    sentencing district or in the district in which the

2    defendant is released.

3        While on supervision, the defendant shall not commit

4    another federal, state, or local crime.  The defendant shall

5    not illegally possess a controlled substance.  The defendant

6    shall comply with the standard conditions that have been

7    adopted by this Court, and shall comply with the following

8    additional conditions:

9        The defendant shall refrain from any unlawful use of a

10   controlled substance and submit to one drug test within 15

11   days of the commencement of supervision and to at least two

12   periodic drug tests thereafter as determined by the pretrial

13   and probation office, and specifically by the defendant's

14   probation officer.

15       The defendant shall not possess a firearm, destructive

16   device, or any dangerous weapon.  The defendant shall submit

17   his person, residence, place of business, computer or

18   vehicle to a warrantless search conducted and controlled by

19   the United States probation office at a reasonable time and

20   in a reasonable manner based upon reasonable suspicion of

21   contraband or evidence of a violation of a condition of

22   release.  Failure to submit to a search may be grounds for

23   revocation.  The defendant shall inform any other residents

24   that the premises may be subject to a search pursuant to

25   this condition.

1       The defendant shall participate in an approved program

2   of outpatient, inpatient, or detoxification substance abuse

3   treatment which will include drug and alcohol testing to

4   determine if the defendant has reverted to substance abuse.

5       The defendant shall cooperate in the collection of DNA

6   as directed by his probation officer.  Based on a review of

7   the defendant's financial condition, and because of the

8   health condition of his daughter and knowing that there will

9   be significant medical bills to pay relative to that, the

10  Court finds that the defendant does not have the ability to

11  pay a fine and therefore the Court waives the fine in this

12  case.

13      The defendant shall pay the United States a special

14  assessment of $100 which shall be due and payable

15  immediately.  And the defendant shall remain in the custody

16  of the marshal's office, he is not a candidate for voluntary

17  surrender, and shall be transported to an appropriate

18  facility.  And again, the Court will make the recommendation

19  that the facility be in Arizona as close to his family as

20  possible.

21      Any questions whatsoever?  Any objections, questions

22  whatsoever about the sentence in this case?

23              MR. HERNANDEZ:  No, Judge.

24              MR. BULFORD:  No, Your Honor.  At this time I

25  would move to dismiss Count 2.

1          THE COURT:  Very well.  The Court grants the

2     motion to dismiss Count 2 of the indictment.

3          All right.  Finally, Mr. Durazo, the Court hereby

4     notifies you that you can appeal your conviction if you

5     believe that your guilty plea was somehow unlawful or

6     involuntary or if there was some other fundamental defect in

7     the proceedings that was not waived by your guilty plea.

8     You also have a statutory right to appeal your sentence

9     under certain circumstances, particularly if you think the

10    sentence is contrary to law.

11         If you do not have enough funds to allow you to take

12    an appeal, you would have the right to have somebody

13    appointed to represent you in prosecuting an appeal, and you

14    would have the right to appeal without cost to you.

15         Also, you have the right to apply for leave to appeal

16    in forma pauperis, and in that event the clerk of court will

17    prepare and file a notice of appeal upon your request.

18         Be advised that with few exceptions any notice of

19    appeal must be filed within ten days of the entry of this

20    Court's judgment, and the Court intends to enter judgment in

21    this case either today or tomorrow at the very latest.  Just

22    so you know when that ten days starts to tick.

23         Do you understand all that I have said with respect to

24    your right to appeal, sir?

25         THE DEFENDANT:  Yes, I do.

1              THE COURT:  Do you know at this time if you wish

2    to take an appeal?

3              MR. HERNANDEZ:  Judge, we're going to discuss

4    that when we -- when I meet with him downstairs immediately

5    that after this.

6              THE COURT:  Okay.  Well, then I gather if your

7    client wishes to take an appeal you will handle that.

8              MR. HERNANDEZ:  I will -- well -- I will, yes.

9              THE COURT:  Okay.  All right.

10        At least you will start the process.

11             MR. HERNANDEZ:  Yes.

12             THE COURT:  Okay.  The most important part of

13   that is the filing of the notice.

14             MR. HERNANDEZ:  Yes.

15             THE COURT:  All right.  If you decide you want to

16   take an appeal, then obviously you can have that discussion

17   with your counsel today following this proceeding.

18        Anything further?

19             MR. BULFORD:  No, Your Honor.

20             MR. HERNANDEZ:  No, Judge.

21             THE COURT:  That concludes this proceeding.

22             THE DEPUTY CLERK:  All rise.

23        (Proceedings concluded at 9:45 a.m.)

24

25

1              C E R T I F I C A T E

2

3          I certify that the forgoing is a correct

4    transcript from the record of proceedings in the

5    above-entitled matter.

6

7              S/Caroline Mahnke              9-13-10

8              Caroline Mahnke, RMR, CRR        Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25